UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
            Plaintiffs,                     )
                                            )
      v.                                    )    Crim. No. 10-699 (GEB)
                                            )
QUALITY FORMULATIONS                        )    **MEMORANDUM OPINION**
LABORATORIES, INC.; AMERICAN SPORTS         )
NUTRITION, INC.; SPORTS NUTRITION           )
INTERNATIONAL, LLC; MOHAMED S.              )
DESOKY; OMAR DESOKY AND AHMAD               )
DESOKY,                                     )
                                            )
            Defendants.                     )
_____)

**BROWN, Chief Judge:**

    This matter comes before the Court upon Defendants' motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29; or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33. (Doc. Nos. 114, 134) The Government opposes Defendants' present motion. (Doc. No. 136) At a hearing before the Court on October 17, 2011, counsel for the parties collectively expressed their desire to rely upon their respective submissions, without oral argument. Therefore, having considered the parties' submissions, the Court will deny Defendants' present motion in its entirety for the reasons that follow.

**I. BACKGROUND**

    On July 12, 2010, the United States filed criminal charges against Defendants Mohamed Desoky, his corporations Quality Formulation Laboratories, Inc. ("QFL"), American Sports Nutrition, Inc. ("ASN"), and Sports Nutrition International, LLC ("SNI"), and his sons Ahmad

Desoky and Omar Desoky, relating to their continued operation of a sports nutrition and supplements manufacturing business despite a Consent Decree of Permanent Injunction ("Consent Decree").  The Consent Decree entered on March 16, 2010 prohibited all direct and indirect manufacture, distribution involving the persons and corporations receiving notice of the injunction.  Specifically, the Government's petition alleged that the Defendants had violated the Consent Decree of Permanent Injunction on four counts: (1) manufacturing activities in Congers, New York between March 18, 2010 and May 13, 2010; (2) failure to notify the FDA thirty days prior to relocating its business; (3) manufacturing activities in Paterson, New Jersey between March 18, 2010 and May 13, 2010; and (4) receiving and distributing in Paterson, New Jersey between September 2010 and January 2011.

The case was tried by a jury.  This Court entered a judgment of acquittal on all counts against SNI, counts three and four against ASN and count four against Omar Desoky.  The jury returned a verdict of guilty on all remaining charges.  On September 8, 2011, Defendants Ahmad and Omar Desoky moved for the entry of a judgment of acquittal on count two against Ahmad and Omar Desoky and on count three against Ahmad Desoky; or, alternatively, for a new trial.

## II. DISCUSSION

### A. Defendants' Motion With Respect to Rule 29

Rule 29 provides that the Court shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R Crim. P. 29(a).  The movant bears the burden to establish that the evidence adduced at trial was insufficient to support the conviction.  *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990).  Upon consideration of a motion for a judgment of acquittal, the District Court does not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the

jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). Rather, the Court reviews "the totality of the evidence, both direct and circumstantial . . . credit[ing] all available inferences in favor of the government." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003). The Court will "sustain the verdict unless it is clear that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (holding that "[the Court] will only find the evidence insufficient when the prosecution's failure is clear.").

Defendants argue that a judgment of acquittal should be entered for Defendants Ahmad and Omar Desoky on count two for aiding and abetting the failure to notify the FDA 30 days prior to relocating Mohamed Desoky's business, and for Omar Desoky on count three for receiving or manufacturing food at the Paterson location, or alternatively, for aiding and abetting the receipt or manufacturing of the same. For the reasons below, the Court sustains the jury's verdict in its entirety.

**1. Count Two Against Ahmad and Omar Desoky**

Under the Government's aiding and abetting theory, the prosecution was required to prove (i) that each defendant "in some sort associate himself with the venture, (ii) that he participate in it as in something that he wishes to bring about, and (iii) that he seek by his action to make it succeed." *Nye & Nissen v. United States*, 336 U.S. 613, 619; 69 S.Ct. 766, 769; 93 L.Ed. 919 (1949) (internal citations omitted). This standard is well-established and widely recognized in the Third Circuit. *See Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir. 1973); citing *United States v. Barber*, 429 F.2d 1394 (3d Cir. 1970); *see also United States v. Local*, 754 F.Supp. 395, 400 (D.N.J. 1991) (requiring that the government "must prove (i) that the substantive crime has been committed; (ii) that the defendant charged with aiding and

abetting that crime knows of the commission of the substantive offense and (iii) that such defendant acted with intent to facilitate the substantive offense.").

Defendants challenge the sufficiency of the evidence demonstrating Defendants' "affirmative participation," the requisite specific intent that the crime be committed. Defendant's Motion ("Def.'s Motion") at 5. The basis for this contention is two-fold: first, according to Defendants, the fact that neither brother signed the Consent Decree absolves them from culpability under the injunction; and, second, Defendants deny that misleading responses and omissions constitute "affirmative participation." Both arguments fail. Defendants argue that because they were not signatories to the Consent Decree, they had no duty to report the relocation to the FDA. However, this issue is moot in regards to the aiding and abetting charge, for which the Government must only prove that the Defendants acted in furtherance of the violation being committed by Mohamed. It is well-settled that the Defendants' acts themselves need not be illegal, and that a jury may consider both direct and circumstantial evidence in determining whether a defendant had the requisite knowledge and intent. *See* 3d Cir. Model Criminal Instruction § 7.04; *see also United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003). Consequently, a fact-finder, after being presented with all of the evidence, could determine that Defendants gave narrowly tailored and incomplete answers with the intent to facilitate the offense.

At trial, the Government presented ample evidence showing that Ahmad and Omar were aware of the terms of the consent decree that prohibited direct and indirect manufacture and distribution, that they attended at least one meeting held for the purpose of continuing operations after and despite the entry of the consent decree, that they failed to consult the FDA about their alleged good-faith third-party operations, and that they responded circuitously and incompletely

4

to questions from FDA investigators.  At trial, the Government presented the Certification of Mohamed Desoky, in which he affirmed the following: (i) that Ahmad and Omar received copies of the Consent Decree within 10 days of its entry; (ii) that the Consent Decree was affixed to the wall next to the employee time-clock; and (iii) that he conducted a meeting of managerial staff "during which the terms and obligations of the Decree were discussed."  Gov't Ex. 2; May 18, 2011 Trial Transcript ("May 18 Tr.") at 69-70.  Additionally, the Government introduced a March 18, 2010 letter written by Mohamed Desoky addressed to QFL employees, in which he stated in relevant part, "our companies have been enjoined from operating the facility.  This means that there will be no production, no packing, and no shipping until the FDA inspect and approve the facility."  Gov't Ex. 4.  A review of the totality of the evidence leads this Court to conclude that there is sufficient evidence to support the convictions of both Defendants.  There is ample evidence from which a rational juror could find the challenged elements of the crime were satisfied beyond a reasonable doubt.  Therefore, the Court sustains the convictions of Ahmad and Omar Desoky with regard to count two.

**2. Count Three Against Omar Desoky**

In count three, the Government charged defendants with receiving and manufacturing products at the Paterson location between March 18, 2010 and May 13, 2010.  Per the Consent Decree, Defendants were required to cease all business activity as of March 16, 2010.  Defendants assert that Omar Desoky should be acquitted on this charge because the prosecutor, during summation, did not review the evidence against Omar in regard to count three.  Thus, the Defendants challenge the sufficiency of all evidence to support Omar's conviction on this count.

Summation is not evidence.  3d Cir. Model Criminal Instruction § 1.07.  Thus, Defendants' argument relying on the insufficiency of evidence summarized in closing arguments

is meritless.  Furthermore, abundant evidence exists to show that Omar Desoky received and manufactured product during the prohibited period.  The Government established through testimony at trial that Omar was a manager.  May 25 Tr. at 75-76.  On April 22, 2010 and April 26, 2010, dates within the time frame specified in count three, Omar received emails that confirmed product orders for raw ingredients.  Gov't Ex. 121-22, 500; May 25 Tr. at 75-76; May 25 Tr. at 92-94.  The Government presented dozens of receipts documenting orders by QFL for food products; the dates of the orders range from March 17, 2010 through May 7, 2010.  Gov't Ex. 122, 300, 302, 310, 311, 313-14, 316-17, 321-24, 331, 340, 344, 351-53, 355-57, 360-64, 371-79.  Orders for raw supplies placed by QFL strongly suggest that QFL was violating the prohibition on manufacturing.  Additionally, evidence that Omar, as manager, was a recipient of these emails is a powerful indicator that he was aware of and participating in the continued operation of QFL business.  Furthermore, on May 13, 2010, FDA investigators toured the Paterson facility and observed boxes of raw ingredients that were received by QFL at Paterson subsequent to the consent decree.  May 18 Tr. at 54; Gov't Ex. 707, 709.  In his testimony at trial, Ahmed Desoky disclosed that Omar led the FDA investigators on a tour of the Paterson facility and assured them that "all production had stopped."  May 26 Tr. at 77.

From this evidence, a rational juror could infer that Omar received raw ingredients at the Paterson location so as to continue the manufacture and distribution of food in violation of the consent decree.  There is adequate evidence to support the jury's guilty verdict against Omar on count three, and it should not be disturbed.

### B. Defendants' Motion With Respect to Rule 33[1]

---

[1] The notice of motion names all Defendants jointly, and seeks relief on their behalf pursuant to Rules 29 and 33 without individualized distinction. (Doc. No. 114)  As discussed above, however, in the Rule 29 context, Defense Counsel's arguments are specifically directed towards only Defendants Ahmad and Omar Desoky. (Doc. No. 134) In contrast, in the Rule 33 context, Defense Counsel's arguments are generalized, and therefore, seek a new trial for

6

Rule 33 of the Fed. R. of Crim. P. allows that, "[u]pon the defendant's motion, the court may vacate judgment and grant a new trial if the interest of justice so requires." According to the Third Circuit, a district court may order a new trial pursuant to Rule 33 "only if it believes that there is a serious danger that a miscarriage of justice has occurred - that is, that an innocent person has been convicted." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). A Rule 33 analysis is distinguishable from an insufficiency of evidence issue in that, "on a Rule 33 motion, the Court exercises its own judgment in assessing the government's case" and does not construe the evidence in the light most favorable to the Government. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002); *see also United States v. Lopez*, 576 F.2d 840, 845 n.1 (10th Cir. 1978) (holding that "when considering a motion for a new trial under Federal Rules of Criminal Procedure 33 a trial judge considers the credibility of witnesses and weighs the evidence as a thirteenth juror.").

Defendants move for a new trial on the grounds of prosecutorial misconduct during the Government's summation. According to defense counsel, the prosecutor: (1) personally attacked defense counsel's ethics and integrity; (2) misstated the record; (3) suggested consultation with counsel was evidence of guilt; (4) misstated the law; and (5) made intentionally misleading arguments. Defendants failed to raise these objections at trial, and therefore the Court reviews the claims for plain error. Fed. R. Crim. P. 52(b); *United States v. Brennan*, 326 F.3d 176, 185 (3d Cir. 2008); *see also United States v. Jones*, 404 F.Supp. 529, 539 (E.D.Pa. 1975). Under the plain error standard of review, a new trial is warranted only if the Court discovers an "egregious error or a manifest miscarriage of justice." *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). The Supreme Court has advised against finding such error in summations due to their

---

all Defendants. (*Id.*) Similarly, the Government's arguments in opposition to a new trial are general, and are directed against all Defendants. (Doc. No. 136) Therefore, accordingly, the Court will analyze Defendants' arguments in the Rule 33 context generally, as to all Defendants.

improvisational nature. *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). Taking the following three factors into consideration, the Court evaluates Defendants' allegations "in light of the entire proceeding": (i) "the prosecutor's improper actions," (ii) "the weight of properly admitted evidence," and (iii) "any curative instructions given by the trial court." *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008); *citing Moore v. Morton*, 255 F.3d 95, 112-113 (3d Cir. 2001).

First, Defendants contend that the prosecutor personally disparaged defense counsel during the Government's rebuttal summation with his use of the word "disgusting" in reference to defense counsels' tactics. Def.'s Motion at 14. The Third Circuit found no error where "the prosecution attacked only [defendant's] argument, not his counsel." *United States v. Rivas*, 493 F.3d 131, 140 (3d Cir. 2007) (determining that "[t]he comment was a fair attack on defendant's strategy."). The prosecutor's remarks do not constitute prosecutorial misconduct because the prosecutor was criticizing the strategy of defense counsel whereby defense counsel in his summation referred to two witnesses as liars. The Government's position is supported by the trial transcript:

> I have no dislike for these counsel, but I take serious, serious exception to some of the things they said up here to you over the last couple hours.
> ∗∗∗
> Now, [defense counsel], called Balu a liar while she was standing here and [second-seat defense counsel] called him a liar.
> ∗∗∗
> [T]oday, Gina Jimenez is a lar [sic]. She lied four times. That's what [defense counsel] just said. Once again, it's disgusting and it's ridiculous.

May 31 Tr. at 147-50.

Moreover, there is no evidence to suggest that the remarks could have prejudiced the jury and contributed to a wrongful conviction. The Court finds no egregious error here that would shed doubt onto the jury's conviction.

8

Second, Defendants assert that the jury "rejected the good faith defense based on the government's misstatement of the record." Def.'s Motion at 14. In an effort to prove "egregious error," Defendants' argument rests primarily on immaterial statements made by the prosecutor in summation. *Id*. at 14-15. Defendants' claims are borderline frivolous and are clearly inadequate grounds for a new trial. Defendants argue that "[t]here was no evidence that Omar Desoky uttered an inculpatory 'oh no' on May 13" in response to the prosecutor in summation stating, "he didn't just say oh, no." May 31 Tr. at 157. Conversational speech or paraphrasing by the prosecutor is not "plainly result in a factual inaccuracy." *United States v. Cruz-Diaz*, 550 F.3d 169, 174 (1st Cir. 2008). Additionally, Defendants contend that the prosecutor's misuse of the word "recall" as opposed to "return" was a miscarriage of justice. May 18 Tr. at 17. In context at trial, the reference to either a return or a recall is tangential and has no bearing on the question with which the jury was confronted: whether Defendants made a knowingly false statement or purposeful omission to the FDA. In the scope of the entire proceeding, the prosecutor's statements could not cause a prejudicial outcome. Moreover, Defendant's second claim here parrots their Rule 29 motion, and the sufficiency of the evidence with regard to count two is thoroughly detailed *supra*; the argument remains unavailing.

Third, Defendants condemn the reference made by the prosecutor in summation to Omar Desoky's request for counsel. Def.'s Motion at 15. Defendants' contention fails for two reasons. First, Federal Rule of Evidence 408(a)(2) bars evidence of "conduct or statements made in compromise negotiations" "except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority." Omar Desoky's request for counsel was in response to government demands for business records pursuant to their investigation, and therefore the remark was

9

proper in the context of the entire proceeding. Second, the Third Circuit has held that once a defendant "places in issue his decision to consult with counsel," then argument regarding that decision is permissible. *United States v. Abate*, 302 Fed. App'x 99, 103-104 (3d Cir. 2008). Prior to the prosecutor's summation, defense counsel had alerted the jury to the fact that Omar retained counsel, in a stipulation on May 26 and in closing arguments on May 31. May 26 Tr. at 100-01; May 31 Tr. at 87. Therefore, the prosecution's remark during rebuttal summation was proper and a new trial is not warranted on this ground.

Fourth, Defendants rearticulate their belief that they did not owe a duty to notify the FDA of a change in location, and as in their Rule 29 motion, argue that the Government misstated the law with respect to count two. Def.'s Motion at 20. The analysis regarding whether Defendants' actions misled the FDA and constitutes aiding and abetting is set forth *supra*. For the purposes of the Rule 33 motion, the Court finds that the prosecutor permissibly summarized the Government's theory of the case and cited the relevant portion of the Court's jury instructions, which accurately stated the law. May 31 Tr. at 69-70. This argument fails to serve as a basis for a new trial.

Fifth, Defendants allege that the Government made two misleading arguments that prejudiced the jury against them. Def.'s Motion at 22. However, both arguments by the Government are permissible because they were made in rebuttal to issues introduced by defense counsel. *See U.S. v. Keller*, 512 F.2d 182, 186 (3d Cir. 1995). Defendants claim first that the Government misled the jury by rebutting the advice-of-counsel defense, on which Defendants heavily relied throughout the entire proceeding to prove good faith. May 31 Tr. at 114. Second, in his testimony, Ahmed Desoky touted QFL's "good manufacturing practices" and decried the unreasonableness of the FDA's regulations, yet he failed to mention to the numerous sanitation

and regulatory violations that originally garnered the FDA's attention. May 26 Tr. at 10. Subsequently, the Government was granted permission to cross-examine Ahmad on the sanitation issue because of his omission. May 26, 2011 Sidebar Transcript at 3-16. In both instances, defense counsel opened the door to discussing the conduct at issue; thus, the Government committed no error when it rebutted the inferences created by the defense. *See U.S. v. Keller*, 512 F.2d at 186. No argument advanced by the Defendants warrants a new trial pursuant to Rule 33. Fed. R. Crim. P. 33.

**III. CONCLUSION**

For all the reasons stated above, Defendants' present motion will be DENIED.[2] (Doc. No. 114)

Dated: October 24, 2011

                                                                                    /s/ Garrett E. Brown, Jr.
                                                             GARRETT E. BROWN, JR., U.S.D.J.

---

[2] In light of the Court's foregoing decisions, Defendants' present motion will be denied on the merits in all respects. As such, the Government's assertion that Defendants' present motion is untimely is moot.